## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
## WESTERN DIVISION

| | |
|---|---|
| NANCY TIROZZI, BETH RAMSAY, GEOFFREY WILSON, ANGELA MOSS, VERONICA MOSELEY, and CHRISTINA SPEARS individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br> v.<br><br>LAKELAND TOURS, LLC, doing business as WORLDSTRIDES,<br><br>       Defendant. | Case No. 3:20-cv-30065-MGM<br><br><br>**Jury Trial Demanded** |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Nancy Tirozzi, Beth Ramsay, Geoffrey Wilson, Angela Moss, Veronica Moseley, and Christina Spears, individually and on behalf of all other similarly situated ("Plaintiffs"), as and for their First Amended Class Action Complaint against defendant Lakeland Tours, LLC, doing business as WorldStrides ("WorldStrides" or "Defendant"), hereby alleges and states as follows:

## NATURE OF ACTION

1. This is a class action for monetary damages, restitution, and declaratory relief resulting from Defendant's failure to fully refund Plaintiffs and members of the Class for pre-paid trips, which included but were not limited to travel, lodging, food,

events and excursions, hereinafter referred to as "Trip(s), " which Defendant failed to provide, as Trips were cancelled, or rescheduled during the Coronavirus Pandemic/Covid-19 Pandemic ("the Covid-19 Pandemic").

## **SUMMARY OF FACTS**

2. Defendant is the nation's largest accredited travel organization and is a tour operator which offers, organizes, markets and sells Trips to over 400,000 students, their families, and other individuals per year, and generated revenues of over $700 million over the twelve-month period ending December 30, 2019.

3. Plaintiffs and members of the Class contracted with Defendant for Defendant to provide specific Trips on specific dates, in exchange for a total price, which was paid in advance by Plaintiffs and members of the Class.

4. Beginning in or around 2019, Plaintiffs and members of the Class registered for Trips scheduled for 2020.

5. Beginning in or around 2019, Defendant began receiving money from Plaintiffs and members of the Class for pre-payment of Trips scheduled for 2020.

6. Defendant has received millions of dollars in Trip pre-payments from Plaintiffs and members of the Class.

7. On or about March 31, 2020, the U.S. Department of State advised U.S. citizens to avoid all international travel due to the global impact of COVID-19.

8. Defendant failed to provide to Plaintiffs and members of the Class with any of the travel services or components of the Trips that Plaintiffs and the members of the Class paid for.

9.     Due to Defendant's failure to provide the Trips, Plaintiffs and members of the Class requested cash refunds from Defendant.

10.    Defendant has failed to refund or fully refund Plaintiffs and members of the Class the money they paid for Trips Defendant failed to provide.

11.    Defendant failed to refund Plaintiffs and members of the Class within 30 days of their request for a cash refund.

## THE PARTIES

12.    At all times material to the allegations of this Amended Complaint, Plaintiff Nancy Tirozzi was a citizen of the Commonwealth of Massachusetts, residing at 40 Kendall Street, Granby, Massachusetts and she currently resides at 368 Cormier Road, Danville, Vermont.

13.    Plaintiff Beth Ramsay, is a citizen of the state of Washington, residing at 502 S. Georgia Street, Kennewick, Washington.

14.    Plaintiff Dr. Geoffrey Wilson is a citizen of the state of Florida, residing at 9320 Reach Road, Rockville, Maryland.

15.    Plaintiff Angela Moss is a citizen of the state of Michigan, residing at 4653 Madison Street, Dearborn Heights, Michigan.

16.    Plaintiff Veronica Moseley is a citizen of the state of Illinois, residing at 4048 28th Avenue, Rock Island, Illinois.

17.    Plaintiff Christina Spears is a citizen of the state of California, residing at 18406 Oak Canyon Road #411, Santa Clarita, California.

18.     Defendant Lakeland Tours, LLC, conducts its business as WorldStrides and maintains its principal place of business at 218 W. Water Street, Suite 400, Charlottesville, VA  22902.

## JURISDICTION AND VENUE

19.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) and (6) because (a) certain members of the proposed classes are citizens of a State or States different from any defendant, and (b) the amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

20.     Venue is proper in the Western Division of this district pursuant to 28 U.S.C. § 1391 because Plaintiff Tirozzi resided in the Western Division of this district at all times material to the allegations of this Amended Complaint and Defendant solicits business in this district and is subject to personal jurisdiction in this district.

## CLASS ACTION ALLEGATIONS

21.     Plaintiffs brings this action, individually and on behalf of all others similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

22.     This action satisfies the numerosity, commonality, typicality, adequacy, superiority, and all other requirements of Rule 23 of the Federal Rules of Civil Procedure.

## PROPOSED CLASS

23.     Plaintiffs propose the following Class:

All persons residing in the United States who paid Defendant for 2020 Trips, which Defendants failed to provide, who did not receive a full cash refund equal to the total amounts paid to Defendant.[1]

24.    **Numerosity.** The members of the proposed Class are so numerous that joinder of all members would be impracticable, consisting of hundreds or thousands of members and the identity of those persons is within the knowledge of and can be ascertained by resorting to Defendant's records.

25.    **Commonality.** There are questions of law and fact common to the proposed Class, which predominate over any questions affecting the individual members of the proposed Class.

26.    Among the questions of law and fact common to Class are:

a.    Whether Defendant received prepayment for Trips from Plaintiffs the Class members;

b.    Whether Defendant failed to provide Plaintiffs the Class members with the Trips;

c.    Whether Defendant failed to give Plaintiffs and the Class members a cash refund equal to the total amounts paid to Defendant;

d.    Whether Defendant breached agreements with Plaintiffs and the Class members and/or the covenant of good faith and fair dealing through its

---

[1]    Plaintiffs reserve the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate and as the Court may otherwise allow. Excluded from the proposed Class are the following: (1) Defendant and any entities in which Defendant has a controlling interest; (2) any entities in which Defendant's officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendant; (3) the United States District Court Judge(s) to whom this action or any transferred action is assigned and any member of any such Judge's immediate family and any other judicial officer assigned to this action or any transferred action; (4) all persons or entities with claims against Defendant for personal injury, wrongful death, and/or emotional distress; (5) all persons or entities that properly execute and timely file a request for exclusion from any proposed class or classes; and (6) all governmental entities.

failure to fully refund Plaintiffs and the Class members a cash refund equal to the total amounts paid to Defendant;

e.     Whether Defendant had a duty to maintain and preserve the money prepaid by Plaintiffs and the Class members and has wrongfully withheld Plaintiffs' and the Class members' prepaid funds and has converted these specific and readily identifiable prepaid funds;

f.     Whether Defendant has, without proper authorization, assumed and exercised the right of ownership and control over the prepaid funds from Plaintiffs and the Class members, in derogation and violation of the rights of Plaintiffs and the Class members without legal justification;

g.     Whether Defendant continues to retain the prepaid funds without the consent of Plaintiffs or the Class members;

h.     Whether Defendant intends to permanently deprive Plaintiffs and the Class members of some or all of the prepaid funds;

i.     Whether the prepaid funds were properly owned by Plaintiffs and the respective Class members, not by Defendant;

j.     Whether Plaintiffs and the Class members are entitled to the immediate possession or repossession of the prepaid funds;

k.     Whether Defendant's acts of failing to fully refund Plaintiffs and the Class members was unfair and/or deceptive;

l.     Whether Defendant failed to refund Plaintiffs and Class members within 30 days of their request for a refund;

m.     Whether Plaintiffs and Class members sustained damages or loss as a result of Defendant's actions, and the nature and extent of damages to which Plaintiffs and the Class are entitled;

n.     Whether the acts and/or omissions of Defendant violated Massachusetts General Laws Chapter 93A, *et seq.*;

o.     Whether the acts and/or omissions of Defendant were *per se* violations of Massachusetts General Laws Chapter 93A § 2(c) because they violated 940 C.M.R. § 15.06;

p.     Whether Defendant was enriched at Plaintiffs' and the Class members' expense by retaining the prepaid refund funds and failing to fully refund Plaintiffs and Class members for cancelled Trips for which Plaintiffs and Class members received no benefit, and whether it is against equity and good conscience to permit Defendant to retain the benefit of such funds.

q.     Whether the acts and/or omissions of Defendant violated the California Consumers Legal Remedies Act, codified at Cal. Civ. Code § 1750, *et seq.*;

r.     Whether the acts and/or omissions of Defendant violated the California False Advertising Law, codified at Cal. Civ. Code § 17500, *et seq.*;

s.     Whether the acts and/or omissions of Defendant violated the California Unfair Competition Law, codified at Cal Civ. Code §17200, *et seq.*;

t.     Whether the acts and/or omissions of Defendant violated the Washington Consumer Protection Act, codified at Chapter 19.86 of the Revised Code of Washington; and

u.     Whether the acts and/or omissions of Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act, codified at 815 ILCS 505, *et seq*.

27.     **Typicality.** Plaintiffs assert claims that are typical of the members of the Class, all of whom prepaid Defendant for Trips that were cancelled or rescheduled prior to their scheduled departure date and did not receive a full cash refund equal to the total amount paid.

28.     **Adequacy of Representation.** Plaintiffs are adequate representatives of the Class because Plaintiffs' claims fit within the proposed Class definition and Plaintiffs' interests do not conflict with the interests of the members of the proposed Class. Plaintiffs are passionate about this litigation personally and will prosecute this action vigorously for the benefit of the members of the Class. Plaintiffs are represented by experienced and able attorneys from coordinated law firms that will collectively and

jointly serve as class counsel. Class counsel has litigated numerous class actions, and Plaintiffs' counsel intends to prosecute this action vigorously for the benefit of the members of the Class. Plaintiffs' counsel and class counsel can fairly and adequately protect the interests of all members of the Class.

29.    **Superiority of Class Action.** The class action is the best available method for the efficient adjudication of the issues raised herein because individual litigation of each proposed Class member's claims would be impractical and unduly burdensome to the courts. Plaintiffs and the members of the proposed Class have suffered irreparable harm as a direct or proximate result of Defendant's breaches and violations as described herein. Because of the size of the claims of most proposed Class members, standing alone, would be *de minimis*, such Class members could not afford to seek legal redress for the breaches and violations described herein. Without the class action vehicle, the Class members would have no reasonable remedy and would continue to suffer losses as Defendant continues to engage in the breaches and violations described herein; moreover, Defendant would be unjustly permitted to retain the pecuniary benefits it received and continues to receive from its violations of the law. Furthermore, individual litigation of each proposed Class member's claims has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. There will be no difficulty in management of this action as a class action.

30.     **Injunctive and/or Declaratory Relief.** Defendant's acts and omissions are uniform as to Plaintiffs and all members of the proposed Class. Defendant has refused to act on grounds that apply generally to Plaintiffs and all members the Class, such that final injunctive relief and/or declaratory relief is appropriate with respect to the Class as a whole.

## COMMON FACTUAL ALLEGATIONS

31.     Defendant is a tour operator in the business of offering, marketing, organizing and selling Trips to over 400,000 members of the public, students, their families, and educators per year, generating over $700 million in revenue.

32.     Over the past year, Defendant collected hundreds of millions of dollars, in advance, from hundreds of thousands of students and their families, including Plaintiffs and members of the Class, for these Trips.

33.     Defendant failed to provide many of these Trips scheduled for 2020, including the Trips of Plaintiffs and members of the Class.

34.     Many of these Trips were cancelled or rescheduled without the authorization or consent of and through no fault of Plaintiffs and members of the Class.

35.     Defendant has failed to fully refund and timely refund Plaintiffs and the members of the Class the amounts prepaid for these Trips.

36.     Defendant concealed or failed to disclose to Plaintiffs and members of the Class and Subclasses that they would not be fully refunded or timely refunded for Trips Defendant failed to provide.

37.     As a result of Defendant's failure to provide the Trips pre-paid by Plaintiffs and members of the Class and Subclasses, Defendant has been unjustly enriched at Plaintiffs' and the Class members' expense.

38.     As a result of Defendant's breaches of their agreements with customers, Defendant has improperly deprived Plaintiffs and the members of the Class of significant funds, causing ascertainable monetary loss and damages.

39.     Defendant failed to issue any refund or partial refund to Plaintiffs and members of the Class within 30 days of a refund request.

40.     On April 30, 2020, Plaintiffs filed their initial class action Complaint in this case.

41.     After filing their initial class action Complaint in this case, Defendant reached out to each named Plaintiff and issued partial cash refunds to every named Plaintiff.

42.     Conversely, many members of the Class throughout the country have received no refund at all from Defendant or a less timely refund, including Class members who prepaid for the same Trips as some of the named Plaintiffs.

43.     Plaintiffs and members of the Class have been consistently and uniformly informed by WorldStrides that Defendant intends to retain several hundred dollars per Class member, amounting to many millions of dollars, in order to unfairly, deceptively, and improperly compensate Defendant "for a small portion of WorldStrides' unrecoverable costs," which Plaintiffs contend is nothing more than an underhanded, unfair and deceptive profit-driven scam.

44.     Defendant's own website, https://worldstrides.com/frequently-asked-questions/, illuminates their lack of any legitimate legal basis for retaining many millions of dollars, clearly driven by the intent to offset their general operational losses: **"(t)he small percentage that we have not returned as part of our refunds helps to cover some of our non-recoverable costs. Many of you have asked what these costs are. Your experience with WorldStrides begins well before you depart for the travel program we planned for you. Many of you have likely interacted with our experienced and dedicated full-time staff. Our teams work with teachers to select the itinerary that matches your groups' needs, help our customers navigate flexible payment options, and of course, find and book travel components like hotels and airline tickets that make the experience possible. As an organization that is accredited just like your school, we have a high bar for our educational content, and we have a dedicated team that develops educational activities and materials, hires and trains our incredible Tour Directors and Course Leaders, and creates printed curriculum materials like Discovery Journals. The timing of the spread of the coronavirus was challenging, since all of these investments were made with the expectation of an exciting tour season. These internal and external costs, along with some unrecoverable payments we made to vendors, far exceed the money we will collect this year."**

45.     Defendant is not legally entitled to retain millions of dollars from the Plaintiffs and the Class members to pay for WorldStrides' call center employees and printing costs simply because Defendant had an "expectation" of a profitable year.

46.    Defendant has no legal basis for retaining millions of dollars from Plaintiffs and members of the Class who are entitled to a full refund.

## PLAINTIFF-SPECIFIC FACTS

## PLAINTIFF TIROZZI

47.    In or around June 2019, Plaintiff Nancy Tirozzi ("Tirozzi") signed her minor daughter up for a WorldStrides Trip to Florida from April 18, 2020 thru April 23, 2020, via Defendant's website, worldstrides.com, for the price of $2,198.00.

48.    On or about June 5, 2019 through February 4, 2020, Defendant received payments from Tirozzi totaling $2,198.00 for her daughter's Trip.

49.    Due to the Covid-19 Pandemic, Tirozzi's daughter's Trip did not take place as scheduled.

50.    Defendant failed to provide the bargained-for Trip.

51.    Without Tirozzi's agreement or consent, her daughter's Trip was rescheduled to June 2020.

52.    After learning that the Trip would not take place as scheduled, on or about April 3, 2020, Tirozzi informed Defendant, in writing, that she wanted a refund.

53.    Despite the demand of Tirozzi for a refund, Defendant refused to refund Tirozzi $2,198.00, the amount she paid Defendant for the Trip.

54.    On or about April 3, 2020, Defendant informed Tirozzi by email that they were refusing to refund $259.00 of the money she paid for the Trip in order to compensate Defendant "**for a small portion of WorldStrides unrecoverable costs**."

55.     Defendant failed to issue Tirozzi a full refund, retained $259.00 of Tirozzi's money, issuing her only a partial refund of $1,939 on May 11, 2020.

56.     Defendant failed to refund Tirozzi any amount within 30 days of her request for a refund.

## PLAINTIFF RAMSAY

57.     In or around May 2019, Plaintiff Beth Ramsay ("Ramsay") signed her minor son up for a WorldStrides Trip to Washington, D.C. from April 6, 2020 thru April 10, 2020 via Defendant's website, worldstrides.com, for the price of $2,575.00.

58.     On or about May 9, 2019 through January 22, 2020, Defendant received payments from Ramsay totaling $2,575.00 for her son's Trip.

59.     Due to the Covid-19 Pandemic, Ramsay's son's Trip did not take place as scheduled.

60.     Defendant failed to provide the bargained-for Trip.

61.     Without Ramsay's agreement or consent, her son's Trip was rescheduled to the spring of 2021.

62.     After learning that the Trip would not take place and had been rescheduled, on or about March 18, 2020, Ramsay informed Defendant, in writing, that she wanted a refund.

63.     On March 23, 2020, WorldStrides responded by email that their "Executive team has made their final decision regarding these tours" and they would "process (Ramsay's) refund via transferrable travel voucher, to be used by 12/31/2022."

64.     Despite the demand of Ramsay for a cash refund, the Defendant has refused to refund Ramsay $ 2,575.00, the amount she paid the Defendant for the Trip.

65.     Defendant failed to issue Ramsay a full refund, retained $289.00 of Ramsay's money, issuing her only a partial refund of $2,286 which she received by check on or about June 2, 2020.

## PLAINTIFF WILSON

66.     In or around May 2019, Plaintiff Wilson signed up his minor son for a WorldStrides trip to Italy from April 9, 2020 thru April 16, 2020 via Defendant's website, worldstrides.com, for the price of $3,850.00.

67.      In or around May 2019 through approximately February 2020, Defendant received payments from Wilson totaling $4,099.00 which included payment of his son's Trip and Trip Insurance.

68.     Due to the Covid-19 Pandemic, Wilson's son's Trip did not take place as scheduled.

69.     Defendant failed to provide the bargained-for Trip.

70.     In or around March 11, 2020, Wilson was informed that WorldStrides was retaining 25% of the amount he paid for his son's Trip, $962.50, in the form of a travel voucher and 75% of the Trip amount would later be refunded after a claim was made under the Trip Insurance.

71.     After learning that his son's Trip would not take place as scheduled, in or around April 2020, Wilson informed Defendant, in writing, that he wanted a cash refund.

72.     In or around April 2020, Wilson filed a complaint with the Better Business Bureau against WorldStrides.

73.     On April 15, 2020, Wilson spoke with WorldStrides and reiterated his request for a full refund and WorldStrides offered a cash refund minus $800.00 in unidentified "fees" which Wilson rejected.

74.     On April 18, 2020, Wilson emailed WorldStrides SVP Jeff Coppola, requesting a full cash refund, which WorldStrides steadfastly denied, citing "**unrecoverable costs associated with (Wilson's) program**", "**(t)his pandemic was not in anyone's financial operational models**" and "**the time and efforts expended by our account management and operations staffs to create, plan, coordinate, and confirm these itineraries and their components are non-recoverable for us.**"

75.     On or about April 19, 2020, Wilson put in a claim for reimbursement under the Trip Insurance.

76.     Despite the demand of Wilson for a full cash refund, Defendant has refused to refund Wilson $3,850.00, the amount he paid Defendant for the Trip.

77.     Defendant failed to issue Wilson a full refund and retained $962.50 of Wilson's money, issuing him only a partial refund of $ 2,887.50 on or about June 5, 2020, and emailing him a $962.50 future WorldStrides "Travel Credit" on August 21, 2020.

## **PLAINTIFF MOSS**

78.     In or around May 2019, Plaintiff Angela Moss ("Moss") signed her minor son and minor daughter up for a WorldStrides Trip to Washington, D.C. from May 12,

2020 thru May 15, 2020 via Defendant's website, worldstrides.com, for $709.00 each and the total price to her was $1,418.00.

79.     In or around May 2019 through around January 2020, Defendant received payments from Moss totaling $1,418.00 for Moss' son and daughter's Trip.

80.     Due to the Covid-19 Pandemic, Moss' son and daughter's Trip did not take place as scheduled.

81.     Without Moss' agreement or consent, her son and daughter's Trip was cancelled.

82.     On April 3, after learning that the Trip would not take place as scheduled, Moss informed Defendant by email that she wanted a refund.

83.     On April 6, 2020, Defendant responded, refusing to fully refund Moss, stating that WorldStrides would retain $230.00 "**for a small portion of WorldStrides' unrecoverable costs**."

84.     Despite Moss' request for a refund, Defendant has refused to refund Moss $1,418.00, the amount she paid Defendant for her son and daughter's Trip.

85.     Defendant failed to issue Moss full refund, retained $230.00 of Moss' money, issuing her only a partial refund of $1,188.00 on May 8, 2020.

## **PLAINTIFF MOSELEY**

86.     In or around April 2019, Plaintiff Veronica Moseley ("Moseley") signed her minor son up for a WorldStrides Trip to New York and Washington DC from June 4, 2020 thru June 8, 2020, via Defendant's website, worldstrides.com.

87.     On or about April 24, 2019 through approximately March 30, 2020, Defendant received payments from Moseley totaling $1,470.00 for her son's Trip.

88.     Due to the Covid-19 Pandemic, Moseley's son's Trip did not take place as scheduled.

89.     Defendant failed to provide the bargained-for Trip.

90.     Without Moseley's agreement or consent, her son's Trip was rescheduled to June 2020.

91.     After learning that the Trip would not take place as scheduled, on or about April 15, 2020, Moseley informed Defendant, in writing, that she wanted a refund.

92.     On or about April 16, 2020, Moseley was informed by the Trip leader by email that WorldStrides was refusing to refund $229.00 of the money she paid for the Trip in order to compensate Defendant "for just a small portion of WorldStrides unrecoverable costs" plus any account fees.

93.     On or about April 16, 2020, Moseley emailed Defendant requesting a full refund.

94.     Despite her demand for a refund, Defendant refused to refund Moseley $1,470.00, the amount she paid Defendant for the Trip.

95.     On or about April 20, 2020, Defendant informed Moseley by email that they were refusing to refund $253.00 of the money she paid for the Trip in order to compensate Defendant "**for a small portion of WorldStrides unrecoverable costs plus any fees on your account**."

96.     On or about April 21, 2020, Defendant informed Moseley by email again that they were refusing issue her a full refund in order to compensate Defendant "**for a small portion of WorldStrides unrecoverable costs**."

97.     Then, Defendant's April 23, 2020 email to Moseley revealed WorldStrides' true motivation for withholding money which Moseley and others paid for Trips Defendant failed to deliver.  **"There were a lot of internal costs associated with the completion of that (Trip) planning, and we are not getting that back…and, like…yourselves, we are dipping into our reserves."**

98.     Despite Moseley's request for a refund, Defendant has refused to refund Moseley $1,470.00, the amount she paid Defendant for her son and daughter's Trip.

99.     Defendant failed to issue Moseley a full refund, retained $253.00 of Moseley's money, issuing her only a partial refund of $1,217.00 on or about August 3, 2020.

## PLAINTIFF SPEARS

100.    In or around September 2019, Plaintiff Christina Spears ("Spears") signed her minor son up for a WorldStrides Trip to New York City and Washington D.C. from April 3, 2020 thru April 8, 2020, via Defendant's website, worldstrides.com, for the price of $2,733.00.

101.    At the time Plaintiff Spears signed up her minor son for the Trip, which included airfare, Defendant failed to disclose the name of the provider of the air transportation.

102.    On or about September 13, 2019 through January 17, 2020, Defendant received payments from Spears totaling $2,751 plus $18 in handling fees for her son's Trip.

103.    Due to the Covid-19 Pandemic, Spear's son's Trip did not take place as scheduled.

104.    Defendant failed to provide the bargained-for Trip.

105.    Without Spears' agreement or consent, her son's Trip was rescheduled to April 2021.

106.    On May 22, 2020, Spears was informed by the Trip leader by email that WorldStrides was refusing to refund $279.00 of the money she paid for the Trip in order to compensate Defendant "**for just a small portion of WorldStrides unrecoverable costs" and that she would receive a refund "6-8 weeks from (the) original scheduled departure date.**"

107.    After learning that the Trip would not take place as scheduled, on May 22, 2020, Spears informed Defendant by email that she wanted a refund.

108.    On May 22, 2020 Defendant emailed Spears acknowledging her refund request and said that her (partial) refund would be sent out 10 weeks after the Trip's originally scheduled departure date.

109.    Despite Spears' request for a refund, Defendant has refused to refund Spears' account $2,751.00, the amount that was paid to Defendant for Spears' sons' Trip.

110.    Defendant failed to issue a full refund, retained $287.00 of Spears' money, plus $18.00 in handling fees, issuing only a partial refund of $2,464.00 to the credit cards used to purchase Spears' Trip on or about August 10, 2020.

**COUNT ONE**
**Violations of Massachusetts General Law, chapter 93A**
**(On behalf of Plaintiff Tirozzi and the Massachusetts Subclass)**

111.    Plaintiff Tirozzi reasserts and incorporates herein each and every allegation in preceding paragraphs of this Amended Complaint as if set forth fully herein.

112.    Plaintiff Tirozzi brings this claim individually and on behalf of the Massachusetts Subclass.

113.    Plaintiff Tirozzi is a person.

114.    Defendant is engaged in trade or commerce.

115.    Defendant sells travel services as a tour operator.

116.    Plaintiff Tirozzi entered into consumer transactions with Defendant.

117.    Plaintiff Tirozzi purchased travel services from Defendant.

118.    As articulated in this Amended Complaint, Defendant violated Massachusetts General Law c.93A ("93A") by engaging in unfair and deceptive acts and practices, including its concealment or failure to disclose to Tirozzi and members of the Massachusetts Subclass that they would not be fully refunded or timely refunded for Trips that Defendant failed to provide.

119.    As articulated in this Amended Complaint, Defendant violated 93A by engaging in unfair and deceptive acts and practices, including its failure to fully refund

and timely refund Tirozzi and members of the Massachusetts refunded for Trips

Defendant failed to provide.

120.    Defendant engaged in unfair methods of competition, unconscionable acts

or practices, and unfair or deceptive acts or practices, in the conduct of trade or

commerce.

121.    Defendant's acts, practices, and conduct were willful and knowing

violations and invaded the rights of Plaintiffs and the Massachusetts Subclass to be free

from deceptive business practices. Defendant's acts, practices, and conduct offend public

policy, and are immoral, unethical, oppressive, and unscrupulous and are likely to

mislead and did mislead Plaintiffs and members of the Massachusetts Subclass.

122.    By their aforementioned acts and omissions, the Defendant committed *per

se* violations of M.G.L. c. 93A, §§ 2 and 9, in that the Defendant violated the provisions

and requirements of 940 Code of Mass. Regs. § 15.06.

123.    Under Massachusetts law, a violation of any provision of 940 CMR 15.00

"shall be an unfair or deceptive act or practice under M.G.L. c. 93A, § 2(a)." 940 C.M.R.

15.01 (1).

124.    Defendant failed to issue any refund or partial refunds to Plaintiff and

members of the Class within 30 days of a refund request as required under Massachusetts

law 940 Mass. Reg. 15.06 (1).

125.    More than thirty days prior to filing the Amended Complaint, Plaintiff

Tirozzi, on behalf of  herself and others similarly situated,  made a written demand for

relief on the Defendant pursuant to M.G.L. c. 93A, §§ 2 and 9.  See Exhibit A, attached hereto.  Such demand was refused by Defendant.

126.    As a direct and proximate result of Defendant's violation of 93A, Plaintiff Tirozzi and members of the Massachusetts Subclass sustained substantial injury and damages in an amount to be determined at trial.

## COUNT TWO
**Violations of the California Consumers Legal Remedies Act,**
**Cal. Civ. Code § 1750, *et seq.***
**(On behalf of Plaintiff Spears and the California Subclass)**

127.    Plaintiff Spears reasserts and incorporates herein each and every allegation in the preceding paragraphs 1 through 110 of this Amended Complaint as if set forth fully herein.

128.    Plaintiff Spears repeats and re-alleges each and every allegation contained in paragraphs 1 through 110 as if such allegations were restated herein at length.

129.    Plaintiff Spears brings this claim individually and on behalf of the California Subclass.

130.    The California Consumer Legal Remedies Act, codified at California Civil Code § 1750, *et seq*. ("CLRA"), prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."  California Civil Code § 1770(a).

131.    Plaintiff Spears and members of the California Subclass are "consumers" pursuant to California Civil Code § 1761(d) as they purchased Trips from Defendant for personal, family or household purposes.

132.    Defendant is a "person" pursuant to California Civil Code § 1761(c) and 1770 and provided "services" pursuant to California Civil Code § 1761(b) and 1770.

133.    Plaintiff Spears and members of the California Subclass engaged in "transactions" pursuant to California Civil Code § 1761(e).

134.    As articulated in this Amended Complaint, Defendant violated the California CLRA, including § 1770(a)(9), by advertising services with no intent to sell them as advertised; engaging in unfair and deceptive acts and practices, including its failure to disclose material facts to Spears and members of the California Subclass that they would not be fully refunded or timely refunded for monies paid for Trips that Defendant failed to provide.

135.    As articulated in this Amended Complaint, Defendant further violated the CLRA by engaging in unfair and deceptive acts and practices, including its failure to fully refund and timely refund Spears and members of the California Subclass for monies paid for Trips Defendant failed to provide.

136.    Prior to purchase, Defendant had a duty to disclose to Plaintiff Spears and members of the California Subclass that it would not issue full refunds or timely refunds for monies paid for Trips Defendant did not provide because Defendant was in a superior bargaining position regarding their internal policies and procedures with the transactions and collecting pre-payment for these Trips. Failure to disclose these terms to Plaintiff

Spears and members of the California Subclass rendered the transactions inherently unfair.

137.    These misrepresentations and omissions of facts that Defendant was obligated to disclose were "material" and "reasonable" as a reasonable consumer would have deemed them important when deciding to purchase Trip(s) from Defendant.

138.    These misrepresentations and omissions constitute "unfair or deceptive acts or practices" prohibited by the CLRA.

139.    Defendant's unfair and deceptive acts and practices were likely to mislead a reasonable consumer.

140.    On June 24, 2020, prior to filing this Amended Complaint, a CLRA notice letter was sent to Defendant in compliance with California Civil Code § 1782(a). Plaintiffs' counsel sent the letter to Defendant via certified mail, return receipt requested, notifying Defendant of its CLRA violations and demanding that it cease and desist from such violations and fully refund monies received therefrom, Exhibit B, attached hereto. Defendant refused to fully refund monies received from Plaintiff Spears.

141.    As a direct and proximate cause of Defendant's CLRA violations, Plaintiff Spears and the California Subclass are entitled to damages in an amount to be determined at trial, and injunctive relief directing Defendant to promptly issue full refunds.

## COUNT THREE
### Violations of the California False Advertising Law,
### Cal. Bus. & Prof. Code § 17500, *et seq*.
### (On behalf of Plaintiff Spears and the California Subclass)

142.    Plaintiff Spears reasserts and incorporates herein each and every allegation in the preceding paragraphs 1 through 110 and paragraphs 127 through 141 of this Amended Complaint as if set forth fully herein.

143.    Plaintiff Spears brings this claim individually and on behalf of the California Subclass.

144.    Defendant is a "seller of travel" pursuant to the California Business & Professions Code § 17500.1 ("FAL").

145.    Plaintiff Spears and members of the California Subclass are "passengers" pursuant to the Cal. Bus. & Prof. Code § 17500.3.

146.    Plaintiff Spears and members of the California Subclass pre-paid Defendant for Trips which constituted "travel services" as defined in Cal. Bus. & Prof. Code § 17500.9.

147.    Defendant failed to provide the Trips; the Trips were cancelled through no fault of Plaintiff Spears and members of the California Subclass.

148.    At the time of or prior to receipt of payment, Defendant failed to conspicuously disclose the name of the provider of the air transportation in violation of the Cal. Bus. & Prof. Code § 17500.13(a)(1)(C).

149.    At the time of or prior to receipt of payment, Defendant failed to conspicuously disclose all terms and conditions relating to the air transportation or travel

services being purchased, including cancellation conditions in violation of the Cal. Bus. & Prof. Code § 17500.13(a)(1)(D).

150.    At the time of or prior to receipt of payment, Defendant failed to clearly and conspicuously disclose that "upon cancellation of the transportation or travel services, where the passenger is not at fault and has not cancelled in violation of any terms and conditions previously clearly and conspicuously disclosed to and agreed to by the passenger, all sums paid to the seller of travel for services not provided will be promptly paid to the passenger…" in violation of the Cal. Bus. & Prof. Code § 17500.13(a)(1)(E).

151.    Defendant violated the Cal. Bus. & Prof. Code § 17500.14 when it failed to return to Plaintiff Spears and the California Subclass "all moneys paid for air or sea transportation or travel services not actually provided to the passenger, within either of the following periods, whichever is *earlier*: (1) Thirty days from one of the following dates: (A) The scheduled date of departure. (B) The day the passenger requests a refund. (C) The day of cancellation by the seller of travel. (2) Three days from the day the seller of travel is first unable to provide the air or sea transportation or travel services."  Cal. Bus. & Prof. Code § 17500.14.

152.    As a direct and proximate result of Defendant's material omissions and unlawful and unfair practices, Plaintiff Spears and members of the California Subclass have suffered injury in fact and have lost money as a result of Defendant's violations of the FAL.

153.    Defendant's wrongful actions occurred and continue, in the State of California and nationwide, in the course of its business as set forth herein.

154.    Plaintiff Spears and members of the California Subclass seek injunctive relief, restitution, and such other relief available under the FAL.

155.    As a direct and proximate result of Defendant's conduct, Plaintiff Spears and the California Subclass are entitled to damages in an amount to be determined at trial, and injunctive relief directing Defendant to promptly issue full refunds.

**COUNT FOUR**
**Violations of the California Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200, *et seq*.**
**(On behalf of Plaintiff Spears and the California Subclass)**

156.    Plaintiff Spears reasserts and incorporates herein each and every allegation in the preceding paragraphs 1 through 110 and paragraphs 127 through 155 of this Amended Complaint as if set forth fully herein.

157.    Plaintiff Spears brings this claim individually and on behalf of the California Subclass.

158.    California's Unfair Competition Law, codified at Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"), prohibits any "unlawful, unfair, or fraudulent business act or practices."

159.    Defendant is a "person" pursuant to Cal. Bus. & Prof. Code § 17201.

160.    Defendant violated the UCL by engaging in unlawful, fraudulent, unfair, and deceptive business acts and practices.

161.    Defendant's fraudulent business practices occurred when Defendant knowingly and intentionally misrepresented and concealed from Plaintiff Spears and members of the California Subclass the fact that Defendant would not issue full refunds or timely refunds for Trips Defendant did not provide or that were cancelled through no fault of Plaintiff and members of the California Subclass.

162.    Defendant's knowing and intentional failure to issue full refunds and timely refunds to Plaintiff Spears and members of the California Subclass after Defendant failed to provide the Trips also constitute fraudulent business practices.

163.    Defendant's business acts and conduct are unlawful and further violated the UCL, as alleged *supra,* by violating the CLRA, Cal. Civ. Code § 1770(a)(9), and violating the FAL, Cal. Bus & Prof. Code § 17500.13 and § 17500.14.

164.    Defendant's business acts and conduct as alleged herein are unfair as they offend established public policy, and are immoral, unethical, unscrupulous, substantially injurious, and Defendant's harm to consumers significantly outweighs any benefits connected to its practices.

165.    Plaintiff Spears and members of the California Subclass suffered substantial injury as a direct result of Defendant's conduct because they would not have purchased Trips from Defendant absent Defendant's unlawful, fraudulent and unfair representations and material omissions of fact.

166.    Additionally, Plaintiff Spears and members of the California Subclass suffered substantial injury as a direct result of Defendant's conduct because they have not

been fully refunded or timely refunded for pre-paid for Trips that Defendant failed to perform or deliver.

167.   Defendant's deceptive actions and failure to fully refund or timely refund Plaintiffs and members of the California Subclass confer no competition or benefit to consumers.

168.   Plaintiff Spears and members of the California Subclass could not have reasonably avoided injury because they could not reasonably have known that Defendant would deprive them of a full cash refund and a timely refund in the event Defendant failed to perform or deliver the pre-paid Trips.

169.   Defendant's actions as described herein were knowing, intentional, and performed with reckless disregard for Plaintiff Spears' and members of the California Subclasses' rights and Defendant's fraudulent, unfair, and unlawful conduct continues to this day.

170.   Plaintiff Spears and members of the California Subclass seek declaratory, injunctive, and equitable relief, including restitution and/or disgorgement, and any other just and proper relief available under UCL.

171.   As a direct and proximate result of Defendant's conduct, Plaintiff Spears and the California Subclass are entitled to damages in an amount to be determined at trial, and injunctive relief directing Defendant to promptly issue full refunds.

**COUNT FIVE**
**Violation of the Washington Consumer Protection Act, RCW Chapter 19.86**
**(On behalf of Plaintiff Ramsay and the Washington Subclass)**

172.    Plaintiff Ramsay reasserts and incorporates herein each and every allegation in preceding paragraphs 1 through 110 of this Amended Complaint as if set forth fully herein.

173.    Plaintiff Ramsay brings this claim individually and on behalf of the Washington Subclass.

174.    The Washington Consumer Protection Act, codified at RCW Chapter 19.86 (the "WCPA"), declares unfair methods of competition and unfair or deceptive acts or practices to be unlawful, and recognizes and incorporates *per se* violations.

175.    Defendant is a "person" within the meaning of the WCPA and conducts "trade" and "commerce" within the meaning of RCW § 19.86.010(2).

176.    Defendant is a "seller of travel" under RCW 19.138.021(6) and RCW 19.138.040.

177.    Plaintiff Ramsay and members of the Washington Subclass pre-paid Defendant for Trips which constituted "travel services" as defined in RCW 19.138.021(7).

178.    Defendant failed to provide the Trips and the Trips were cancelled through no fault of Plaintiff Ramsay and members of the Washington Subclass.

179.    At the time of or prior to receipt of payment, Defendant failed to clearly and conspicuously disclose that "if transportation or other services are cancelled by the seller of travel, all sums paid to the seller of travel for services not performed in

accordance with the contract between the seller of travel and the purchaser will be refunded within thirty days of receiving the funds from the vendor with whom the services were arranged, or if the funds were not sent to the vendor, the funds shall be returned within fourteen days after cancellation by the seller of travel to the purchaser unless the purchaser requests the seller of travel to apply the money to another travel product and/or date" as mandated by RCW 19.138.40.

180.    Defendant committed *per se* violations of the WCPA when it failed to return to Plaintiff Ramsay and the Washington Subclass "the money due…within thirty (30) days of receiving the funds from the vendor with whom the services were arranged. If the funds were not sent to the vendor and remain in possession of the seller of travel, the funds shall be refunded within fourteen (14) days."  RCW 19.138.50(1).

181.    As a direct and proximate result of Defendant's material omissions and unlawful and unfair practices, Plaintiff Ramsay and members of the Washington Subclass have suffered injury in fact injury as a direct result of Defendant's conduct because they have not been fully refunded or timely refunded for pre-paid for Trips that Defendant failed to perform or deliver.

182.    Defendant's actions were unfair and deceptive and injurious to the public interest because they violated RCW 19.138.050, injured Plaintiff Ramsay and members of the Washington Subclass and had the capacity to injure other persons.

183.    Defendant's unfair and deceptive business practices occurred when Defendant knowingly and intentionally misrepresented and concealed from Plaintiff Ramsay and members of the Washington Subclass the fact that Defendant would not

issue full refunds or timely refunds for Trips Defendant did not provide or that were cancelled through no fault of Plaintiff and members of the Washington Subclass.

184.    Defendant's knowing and intentional failure to issue full refunds and timely refunds to Plaintiff Ramsay and members of the Washington Subclass after Defendant failed to provide the Trips further constitute fraudulent business practices.

185.    Defendant's wrongful actions occurred and continue, in the State of Washington and nationwide, in the course of its business as set forth herein.

186.    Plaintiff Ramsay and members of the Washington Subclass seek injunctive relief, equitable relief, including restitution and/or disgorgement, and any other just and proper relief available under the WCPA.

187.    As a direct and proximate result of Defendant's conduct, Plaintiff Ramsay and the Washington Subclass are entitled to damages in an amount to be determined at trial, and injunctive relief directing Defendant to promptly issue full refunds.

**COUNT SIX**
**Violation of the Illinois Consumer Fraud**
**and Deceptive Business Practices Act,**
**815 ILCS 505, *et seq*.**
**(On behalf of Plaintiff Moseley and the Illinois Subclass)**

188.    Plaintiff Moseley reasserts and incorporates herein each and every allegation in preceding paragraphs 1 through 110 of this Amended Complaint as if set forth fully herein.

189.    Plaintiff Moseley brings this claim individually and on behalf of the Illinois Subclass.

190.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), declares unfair methods of competition and deceptive acts or practices to be unlawful, and recognizes and incorporates *per se* violations, including "the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act."" 815 ILCS 505/2.

191.    The ICFA states, in relevant part, that any person who violates the "Travel Promotion Consumer Protection Act", 815 ILCS 420, "commits an unlawful practice within the meaning of (the ICFA)." 815 ILCS 505/2Z.

192.    Defendant is a "person" and conducts "trade" and "commerce" within the meaning of the ICFA, pursuant to 815 ILCS 505/1.

193.    Plaintiff Moseley and members of the Illinois Subclass are consumers within the meaning of the ICFA.

194.    Defendant is a "travel promoter" who advertises under the ICFA, pursuant to 815 ILCS 420.

195.    Plaintiff Moseley and members of the Illinois Subclass pre-paid Defendant for Trips on behalf of their minor children, on others behalves, or on behalf of themselves, are "passengers" within the meaning of the ICFA, pursuant to 815 ILCS 420.

196.    Defendant failed to provide the Trips and the Trips were cancelled through no fault of the passengers or Plaintiff Moseley and members of the Illinois Subclass.

197.    Defendant violated the Travel Promotions Consumer Protection Act at the time of receipt of payment for the Trips when it failed to *clearly and conspicuously* disclose the following information: (1) the location and number of the trust account

Case 3:20-cv-30065-MGM   Document 20   Filed 09/16/20   Page 34 of 42

required by Section 6 if the ICFA; (2) the name of the carrier with which the Defendant

contracted to provide the transportation; (3) the conditions, if any, upon which the

contract between the Defendant and the passenger may be cancelled, and the rights and

obligations of all parties in the event of such cancellation; (4)  the conditions, if any, upon

which the contract between the Defendant and the carrier or other service provider may

be cancelled, and the right and obligations of all parties in the event of such cancellation;

and (5) a statement, in boldface type, that upon cancellation through no fault of the

passenger, all sums paid to Defendant for services not performed in accordance with the

contract between Defendant and the passenger will be **promptly** refunded by Defendant

to the passenger or the party who contracted on behalf of the passenger.

198.    Defendant violated the Travel Promotions Consumer Protection Act when

it failed to "promptly return" to Plaintiff Mosely and members of the Illinois Subclass a

full refund of "all money paid" for the cancelled Trip as required by 815 ILCS 420/5.

199.    Defendant's violation of the provisions of the Travel Promotions Consumer

Protection Act alleged herein constitute unlawful practices pursuant to Section 2Z of the

ICFA and act and are *per se* violations of the ICFA.

200.    As a direct and proximate result of Defendant's unfair and deceptive

actions, and *per se* violations of the ICFA, Plaintiff Moseley and members of the Illinois

Subclass have suffered substantial injury as a direct result of Defendant's conduct

because they have not been fully refunded or timely refunded for pre-paid for Trips that

Defendant failed to perform or deliver.

{N0211789.1}                                34

201.    Plaintiff Moseley and members of the Illinois Subclass seek injunctive relief, equitable relief, including restitution and/or disgorgement, punitive damages, and any other just and proper relief available under the ICFA.

202.    As a direct and proximate result of Defendant's conduct, Plaintiff Moseley and the Illinois Subclass are entitled to damages in an amount to be determined at trial, and injunctive relief directing Defendant to promptly issue full refunds.

**COUNT SEVEN**
**Unjust Enrichment**
**(On Behalf of all Plaintiffs and the Class)**

203.    Plaintiffs reassert and incorporate herein each and every allegation in preceding paragraphs 1 through 110 of this Amended Complaint as if set forth fully herein.

204.    Plaintiffs brings this claim on behalf of themselves and members of the Class.

205.    Plaintiffs and members of the Class conferred a benefit on Defendant by way of monies paid to purchase Trips that were later cancelled or rescheduled and Trips that Defendant failed to deliver or perform.

206.    Defendant has knowledge of these benefits.

207.    Defendant voluntarily accepted and retained these benefits.

208.    These benefits were unjustly and unlawfully obtained by Defendant because Defendant took monies for Trips which it then failed to perform or deliver to Plaintiffs and the Class and it would be unjust and inequitable for the Defendant to retain the benefit without paying the value thereof.

209.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class are entitled to damages in an amount to be determined at trial.

**COUNT EIGHT**
**Breach of Contract**
**(On Behalf of all Plaintiffs and the Class)**

210.    Plaintiffs reassert and incorporate herein each and every allegation in preceding paragraphs 1 through 110 of this Amended Complaint as if set forth fully herein.

211.    Plaintiffs brings this claim on behalf of themselves and members of the Class.

212.    Plaintiffs and members of the Class contracted with Defendant to provide specific Trips on specific dates in exchange for a total price, which was paid, in advance, by Plaintiffs and members of the Class.

213.    Defendant has materially breached its contracts with Plaintiffs and members of the Class.

214.    Defendant materially breached its contracts with Plaintiffs and members of the Class by failing to provide or deliver the Trips for which Plaintiffs and members of the Class pre-paid, and the Plaintiffs and Class members have suffered direct and consequential financial damage and harm as a result.

215.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class are entitled to damages in an amount to be determined at trial.

## COUNT NINE
### Breach of Duty of Good Faith & Fair Dealing
### (On Behalf of all Plaintiffs and the Class)

216.    Plaintiffs reassert and incorporate herein each and every allegation in preceding paragraphs 1 through 110 of this Amended Complaint as if set forth fully herein.

217.    Plaintiffs brings this claim on behalf of themselves and members of the Class.

218.    The covenant of good faith and fair dealing is an element of the agreements between Plaintiffs and Defendant, as well as the agreements between Defendant and members of the Class.  In connection with the execution and performance of obligations under an agreement, the covenant of good faith and fair dealing means preserving the spirit – not merely the letter – of the bargained-for agreement.  Stated differently, the parties to an agreement are mutually obligated to comply with the substance of their agreement in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the execution and performance of obligations under an agreement.

219.    By failing to fully refund Plaintiffs and members of the Class the amounts pre-paid for Trips that were cancelled or rescheduled, Defendant has breached the covenant of good faith and fair dealing with respect to Plaintiffs and members of the Class.

220.    Plaintiffs and members of the Class who pre-paid Defendant for Trips have performed all or substantially all of the obligations imposed upon them under the relevant agreements.

221.    Plaintiffs and the members of the Class have sustained damages, including monetary losses, as a direct and proximate result of Defendant's breach of the covenant of good faith and fair dealing.

222.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class are entitled to damages in an amount to be determined at trial.

## COUNT TEN
### Conversion
### (On Behalf of all Plaintiffs and the Class)

223.    Plaintiffs reassert and incorporate herein each and every allegation in preceding paragraphs 1 through 110 of this Amended Complaint as if set forth fully herein.

224.    Plaintiffs brings this claim on behalf of themselves and members of the Class.

225.    Plaintiffs and the other members of the Class have an undisputed right to immediate refunds of the amounts they have pre-paid for Trips that were cancelled or rescheduled.

226.    Defendant wrongfully exercised control over, or intentionally interfered with, the rights of Plaintiffs and members of the Class by refusing to grant, upon demand, timely refunds of, and unlawfully retaining, the amounts Plaintiffs and the other members of the Class have pre-paid for Trips that were cancelled or rescheduled.

227.    Defendant has converted and wrongfully deprived Plaintiffs and members of the Class of the right to their property, in this case, the amounts they have pre-paid for Trips that were cancelled or rescheduled.

228.    Plaintiffs and the members of the Class have sustained damages, including monetary losses, as a direct and proximate result of Defendant's wrongful conversion of the prepaid funds.

229.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class are entitled to damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class and Subclasses, respectfully request the following relief:

a.    An Order declaring that this action is a proper class action, certifying the Class as defined herein and pursuant to Rule 23 of the Federal Rules of Civil Procedure, designating Plaintiffs as Class Representative and appointing the undersigned counsel as Class Counsel;

b.    An Order requiring Defendant to immediately issue full refunds to Plaintiffs and members of the Class and Subclasses including any consequential damages resulting therefrom;

c.    An Order of disgorgement of wrongfully obtained profits;

d.    An award of compensatory, statutory, consequential, and punitive damages, in an amount to be determined;

e.    An award of damages sustained by Plaintiff and the Massachusetts Subclass as a result of Defendant's violations of Chapter 93A;

f.    An award of damages sustained by Plaintiff and the California Subclass as a result of Defendant's violations of the CLRA;

g.      An award of damages sustained by Plaintiff and the California Subclass as a result of Defendant's violations of the FAL;

h.      An award of damages sustained by Plaintiff and the California Subclass as a result of Defendant's violations of the UCL;

i.      An award of damages sustained by Plaintiff and the Illinois Subclass as a result of Defendant's violations of the ICFA;

j.      An award of damages sustained by Plaintiff and the Washington Subclass as a result of Defendant's violations of the WCPA;

k.      A judgment awarding Plaintiffs and members of the Class, restitution of all monies charged/received by Defendants;

l.      A judgment awarding Plaintiffs and members of the Class actual damages;

m.      A judgment awarding Plaintiffs and members of Class equitable monetary relief;

n.      A judgment awarding Plaintiffs and members of the Class reasonable attorneys' fees, costs, and expenses;

o.      An Order declaring that Defendants are obligated to pay both pre-judgment and post-judgment interest on any amounts awarded; and

p.      An Order granting such other and further relief as the Court deems just and proper under the circumstances

## **DEMAND FOR JURY TRIAL**

Plaintiffs, individually and on behalf of all other similarly situated, hereby demand a trial by jury as to all issues.

Dated: September 16, 2020                    Plaintiffs,
                                             By Their Attorneys,

                                             */s/ Angela Edwards*
                                             _____

                                             Angela Edwards, Esq. (BBO No. 565111)
                                             LAW OFFICE OF ANGELA EDWARDS
                                             72 Canterbury Circle
                                             East Longmeadow, Massachusetts 01028
                                             Tel.:   (413) 525-3820
                                             angelaedwards@charter.net




                                             */s/ Mark J. Albano*
                                             _____
                                             Mark J. Albano, Esq. (BBO No.: 013860)
                                             ALBANO LAW, LLC
                                             One Monarch Place, Suite 1330
                                             Springfield, Massachusetts 01144-1330
                                             Tel: (413) 736-3500
                                             Fax: (413) 746-9224
                                             mark@albanolawllc.com




                                             */s/ Lee S. Shalov*
                                             _____

                                             Lee S. Shalov , Esq.
                                             Jason S. Giaimo, Esq.
                                             McLaughlin & Stern, LLP
                                             260 Madison Avenue
                                             New York, NY 10016
                                             Tel.: (212) 448-1100
                                             Fax: (212) 448-00066
                                             lshalov@mclaughlinstern.com
                                             jgiaimo@mclaughlinstern.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2020, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Mark J. Albano
_____
Mark J. Albano, Esq.